**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | | |
|---|---|---|
| MICHAEL F. CRUM, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.    1:19-cv-2045-JRS-TAB |
| | ) | |
| SN SERVICING CORPORATION, | ) | |
| FAY SERVICING, LLC., PLANET HOME | ) | |
| LENDING, LLC, EQUIFAX INFORMATION | ) | |
| SERVICES, LLC, HOME SERVICING, LLC, | ) | |
| and US BANK TRUST NA, as Trustee of the | ) | |
| SCIG Series III Trust, | ) | |
| | ) | |
| *Defendants* | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT PLANET HOME LENDING, LLC.'S MOTION TO DISMISS AND**
**MOTION TO WITHDRAW REFERENCE**

Plaintiff, Michael Crum ("Crum"), by counsel, submits this Response in Opposition to

the Motion to Dismiss [Dkt. 53] submitted by Defendant Planet Home Lending, LLC. ("Planet"

or "Planet Home").  Planet seeks to dismiss Counts VI and XIII of the First Amended Complaint

("FAC").  For the reasons set forth below, Crum respectfully requests the Court deny the Motion

to Dismiss in all respects.

**INTRODUCTION**

From October 12, 2012 onward, Crum made every payment he was required to make

towards his home loan, paid every penny the servicers who serviced his loan - Home Servicing,

LLC., Planet, Fay Servicing, LLC., and SN Servicing Corp. - were ever entitled to collect; plus

thousands of dollars more. He factually and legally cured any arrearage that had accumulated

pre-October 2012. Planet confirmed this fact in its Response to Notice of Final Cure Payment.

[Doc]. Yet still, beginning the month after his successful exit from bankruptcy, he was immediately placed back into a [manufactured] state of delinquency. To his credit, Crum continued on making timely and adequate payments each month nonetheless.

This case concerns the Defendants' recurrent mistreatment of Crum by: (a) misapplying payments during *and after* his successful completion of a Chapter 13 bankruptcy; (b) wrongfully assessing fees and other charges; (c) placing his loan in a manufactured state of delinquency and default; (d) reporting his loan as delinquent to the national credit reporting agencies when it was not; and, *most importantly*, (e) their failure to correct any of the foregoing despite numerous opportunities to do so.

Planet seeks to convince the Court to dismiss his claims or, alternatively, bifurcate these proceedings. But in doing so, Planet relies on a mischaracterization of the partial life of loan history attached to the First Amended Complaint and the omission of any reference to the Response to Notice of Final Cure it filed shortly before the conclusion of Crum's bankruptcy proceedings. For these reasons, its Motion to Dismiss should be denied.

## FACTS ALLEGED IN THE COMPLAINT AND THE EXHIBITS ATTACHED THERETO BUT PREVIOUSLY IGNORED BY PLANET

In mid-2017, Planet became the new servicer of Crum's loan. On July 24, 2017, Planet filed a transfer of claim with the Bankruptcy Court. (FAC, PP 76, 77). On January 19, 2018, Planet filed a Response to Notice of Final Cure affirming that Crum had cured any arrearage owed on his loan and maintained his monthly payments during the duration of his bankruptcy.

The account history, which Crum attached to the First Amended Complaint as Exhibit J, is a *partial* account history. It does not reflect or contain all transactions relevant to the Loan. This is why it is described as a "partial Life of Loan History" in the *First Amended Complaint*. It is nearly impossible to perform a full and accurate accounting of a loan without a complete

account history. The partial account history plainly reflects Planet's assessment of fees during the duration of Crum's bankruptcy.

## LEGAL STANDARD

A properly pleaded complaint must provide a "short and plain statement of the claim that shows the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Although Rule 8 requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," it does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Factual allegations are only required to be enough to rise above the speculative level. *Twombly*, 550 U.S. at 555.  A complaint that contains "enough facts to state a claim to relief that is plausible on its face" should survive a motion to dismiss. *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts apply a two-step approach when evaluating motions to dismiss. *Id*. at 679. First, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from the complaint in the plaintiff's favor.  *Id.*; *Fednav Int'l Ltd. v. Continental Ins. Co*., 624 F.3d 834, 837 (7th Cir. 2010).   Second, the court considers whether the factual allegations in the complaint allege a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  A claim is plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  In other words, the pleader has shown that she is entitled to relief when the allegations of the complaint have crossed the line from the conceivable to the plausible.  *Id*.  "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Id*.

**A.**     **This Court Should Withdraw the Bankruptcy Reference and Hear the Bankruptcy-Related Claims Alongside the Other Claims.**

3

As an initial matter, Planet Home makes little mention of this Court's discretion to hear the bankruptcy-related claims and seemingly attempts to mislead the Court into believing that the bankruptcy claims were irreversibly referred to the bankruptcy court upon filing. While Planet Home is correct that Local Rule 83-8(a) automatically refers all Title 11 proceedings to the district's bankruptcy court, this District Court is able to withdraw the reference "for cause shown." 28 U.S.C. § 157(d). Although the statute does not enumerate the factors that courts consider "for cause shown," common law from this circuit provides six: (1) whether the claims are core or non-core; (2) whether a jury trial was requested; (3) judicial economy and convenience; (4) conservation of creditor and debtor resources; (5) promoting uniformity and efficiency of bankruptcy administration; and (6) reduction of forum shopping and confusion. *Brandt v. Suntrust Leasing Corp.,* 2014 WL 1729274 (N.D. Ill. 2014).

Core proceedings are those that arise under the Bankruptcy Code such that the Code itself is the source of the claimant's right or remedy. In re United States Brass Corp., 110 F.3d 1261, 1268 (7th Cir. 1997). The bankruptcy court may enter judgment in "core proceedings" and the district court would serve as the appellate body. In non-core proceedings, however, a bankruptcy court may only issue a recommendation to the district court who will thereafter make a determination for final judgment. In this jurisdiction, violations of the automatic stay and Federal Rule of Bankruptcy Procedure 3002.1, as Planet Home points out, have been held to be "core proceedings." *Mansker v. Diversified Adjustment Service,* 2017 WL 2908768 (N.D. Ill. 2017). However, this one factor is far from dispositive and, in fact, the other factors strongly favor this Court's retention of the bankruptcy-related claims. Preliminarily, however, the jury trial factor is inapplicable in the circumstances at bar because, as stated above, the claims at issue have been held to be "core proceedings"—"the existence of a jury trial demand is only a factor for non-core

4

proceedings, because a jury verdict, like any judgment in the bankruptcy court on a non-core proceeding, is merely a recommendation to the district court." *In re Sevko,* 143 B.R. 114 at *7 (N.D. Ill. 1992). As such, the remainder of this section analyzes the remaining four factors.

First, this Court's retention of the bankruptcy-related claims would serve judicial economy. Here, this Court will ultimately prevail over all pretrial matters, including discovery, as well as preside over the final trial where final judgment will be entered. By this Court managing all pretrial matters, judicial economy is served because the proceedings are not needlessly bifurcated—that is, the parties, the facts, and any disputes that arise between the parties before trial will be able to be addressed by a singular decision-maker. *Caruso v. Modany*, 2019 U.S. Dist. LEXIS 2346. Failure to withdraw the reference could result in conflicting case management and ultimately delay the timely resolution of these proceedings. Furthermore, much like in *Caruso,* the non-bankruptcy-related claims and bankruptcy-related claims are "intertwined" and "based on the same facts." *Id* at 4. "Asking the bankruptcy court to familiarize itself with the issue for all pretrial motions, only to handoff the case when it comes to final adjudication, would result in duplication of work and thus would be an inefficient allocation of judicial resources." *Id*. Therefore, this Court's retention of the bankruptcy-related claims would serve judicial economy.

Similarly, this Court's retention of the bankruptcy-related claims would also assist in conserving debtor and creditor resources. Both parties' resources and efforts would be duplicated if the reference was not withdrawn because the parties would be forced to litigate substantially the same set of facts in two separate courts. This would require the parties to expend additional resources in the form of attorney-time, filing fees, other costs, and additional client time.  If this Court withdrew the bankruptcy reference, however, the parties would be saved from this

duplication of effort and could address the claims under one Court, one decision-maker, and one case management plan. Therefore, this Court withdrawing the bankruptcy reference would assist in conserving debtor and creditor resources.

Withdrawing the bankruptcy reference would also serve the interest of uniform and efficient bankruptcy administration. By allowing the bankruptcy-related claims to stay in the bankruptcy court, this Court would be requiring the bankruptcy court to resurrect a case that has not had any docketed activity for almost two years--the case is closed, the debtor has been discharged, and there are no pending matters. To require the bankruptcy court to re-open the case and re-familiarize itself with the parties and facts at issue would hardly be an efficient use of the bankruptcy court's or this court's time or resources because the greater issues, which relate to the bankruptcy-related claims, are only available in the district court. Therefore, referral to the bankruptcy court would be an inefficient form of bankruptcy administration and also has the tangential effect of impeding the efficiency of the district court proceedings.

Finally, retention of the bankruptcy-related claims by this Court would reduce forum shopping and confusion. By retaining the bankruptcy-related claims, this Court would maintain all of Crum's claims in front of the same decision-maker. This, in turn, would allow this Court to more easily see the relationship between Crum's bankruptcy-related claims and his other non-bankruptcy related claims, allowing for a proper holistic viewing of Crum's claims in their entirety. Additionally, this Court's retention of the bankruptcy-related claims would further reduce confusion stemming from two courts presiding over the same facts and many of the same issues. For example, if an assessment of fees is found to be improper in the bankruptcy court, the result would be a violation of the automatic stay. Likewise, a finding of an assessment of fees as improper would similarly result in a violation of RESPA in this Court's proceedings. Thus,

retention of the bankruptcy-related claims by this Court would permit this Court to see the interrelatedness of Crum's bankruptcy-related and non-bankruptcy related claims and would reduce related confusion.

**B.      Crum's Claims Under the ICVRA Are Appropriate For Tolling.**

"The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured, and by whom." *U.S. v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010). *See also Petra Presbyterian Church v. Vill. of Northbrook,* 489 F.3d 846, 850 (7th Cir. 2007); *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 688 (7th Cir. 2004). When there is a conceivable set of facts consistent with the complaint that would defeat a statute-of-limitations argument pursuant to the "discovery rule," questions of timeliness should be left to summary judgment or trial. *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 763 (N.D. Ill. 2016); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc..*, 782 F.3d 922, 929 (7th Cir. 2015).

In the present case there is a conceivable set of facts consistent with the allegations of the Complaint that would defeat Planet's statute-of-limitations argument based on the "discovery rule." Specifically, the Complaint alleges that it was not until August 2018 that Crum could have possibly discovered the wrongful conduct. Accordingly, it is inappropriate to consider whether any of the conduct about which Crum complains under the ICVRA is time-barred by the applicable statute of limitations.

**C.      The Loan History Attached to the Amended Complaint Is a "Partial" Loan History And Is Not Conclusive To The Allegations Contained Therein**

Planet cites to *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, 2019 WL 1254912 (N.D. Ill. Mar. 19, 2019), *Konieczka v. Wachovia Mortg. Corp.*, 2012 WL 1049910 (N.D. Ill. Mar. 28, 2012), and *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222 (N.D. Ill. Aug. 10, 2009) to support

their argument that the Life of Loan History attached to the Amended Complaint shows that Planet did not collect any fees, charges, or costs and did not remove any funds from the suspense account. However, these cases are factually distinct from the facts at issue here.

In *Miszczyszyn*, *Konieczka*, and *Levey*, Plaintiffs had attached documents to their operative complaints which respectively contained information that served as a clear, "smoking gun" which contradicted various allegations made in the respective complaints. *Miszczyszyn*, 2019 WL 1254912 at *5 (in her Complaint, the *Miszcyszyn* plaintiff alleged that she was improperly charged for inspection fees and that the assessment of the fees resulted in additional interest accruing on the amount owed under the mortgage, but the plaintiff attached an exhibit to her complaint which clearly demonstrated that property inspection fees were not considered in the calculation of interest); *Konieczka*, 2012 WL 1049910 at *2 (the *Konieczka* plaintiff's Complaint stated that "as a direct result of Wachovia's conduct" they had incurred "late fees, penalty fees, and a negative impact to their personal credit ratings and histories – all of their reporting agency credit scores ha[d] decreased[,]" but plaintiff attached a document to their complaint stating that Plaintiffs had overpaid interest by $232.62 and that $232.62 was reversed from interest and applied to the principal, and any late charges were waived, clearly showing that Wachovia had not charged plaintiffs any fees and had corrected plaintiffs account); *Levey*, 2009 WL 2475222 at *5 (the *Levey* plaintiff alleged that she never "received the proceeds of the approximately $100,000 loan[,]" but plaintiff attached an exhibit to the complaint which clearly "show[ed] that [plaintiff] was to be paid only $54.85 of the nearly $74,000 loan issued . . . ; the majority of the proceeds were distributed to pay off [plaintiff's] previous mortgages.")

Here, however, the attached document, the Life of Loan History, does not clearly indicate that Planet did not collect any fees, charges, or costs and did not remove any funds from the

suspense account in contradiction to the allegations made in Crum's Complaint. Here, Crum still does not yet have a complete Life of Loan History; rather, what was attached was only a partial portion of Crum's Life of Loan History. Ongoing discovery between Planet and Crum will ostensibly produce the full Life of Loan History. Only then can the Court determine if the information contained in the full Life of Loan History contradicts the allegations in Crum's complaint, as the attached exhibits so contradicted the respective complaints in *Miszczyszyn*, *Konieczka*, and *Levey*. Accordingly, Planet's argument that the Life of Loan History disproves Crum's allegations is inappropriate and premature at this stage in the proceedings.

## CONCLUSION

In light of the aforementioned, Crum respectfully requests that this Court DENY  Planet Home's Motion to Dismiss with respect to Counts IX and X and withdraw any reference to the bankruptcy court.  However, should the Court grant Planet Home's Motion to Dismiss with respect to Counts IX and X, in whole or in part, Crum respectfully requests leave to amend his Complaint of any deficiencies.

Respectfully submitted,

*/s/ Travis W. Cohron*
Travis W. Cohron, No. 29562-30
**Clark, Quinn, Moses, Scott & Grahn, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
tcohron@clarkquinnlaw.com
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David W. Patton
John D. Waller
**Wooden McLaughlin LLP**
david.patton@woodenlawyers.com
john.waller@woodenlawyers.com
*Counsel for Fay Servicing, LLC*

Pamela A. Paige
**Plunkett Cooney, P.C.**
ppaige@plunkettcooney.com
*Counsel for SN Servicing Corporation and US Bank Trust National Association*

Jill A. Sidorowicz
**Noonan & LIberman, Ltd.**
jsidorowicz@noonanandlieberman.com
*Counsel for Planet Home Lending, LLC*

/s/ Travis W. Cohron
Travis W. Cohron, No. 29562-30

**Clark, Quinn, Moses, Scott & Grahn, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204