# EXHIBIT N

```
 1  say that you probably are looking at a minimum of four
 2  o'clock at the rate we are moving.
 3   MR. FOGLEMAN:  Okay.  Then, I guess I am
 4  going to need an hour and a half for lunch.
 5   MR. WOOTEN:  Well, then we'll probably going
 6  to need until five to finish, but that's fine.  I have
 7  all afternoon blocked.  So, we'll see you back here at
 8  two o'clock then.
 9   MR. FOGLEMAN:  Okay.
10   VIDEOGRAPHER:  All right.  We are going off the
11  record at 12:35 p.m.
12  (Pause.)
13   VIDEOGRAPHER:  Okay.  We are going back on the
14  record at 2:06 p.m.
15  BY MR. WOOTEN:
16   Q Okay.  Mr. Fogleman, again, my name is Nick
17  Wooten.  We returned from a lunch break and we were --
18  will pick up, kind of, where we left off.  First of
19  all, during your lunch break, did you have an
20  opportunity to check your files to see if there was
21  some other bankruptcy document that I am not showing
22  you today that would -- would show that Mr. Crum had -
23  - had not paid 60 payments towards his continuing
24  monthly mortgage payments during the Chapter 13?
25  A I -- I did not have time to do -- to check my
```

Transcription - William A. Fogleman 30(b)(6)         Page 75
09/14/2020

```
 1  files for that.  No.
 2   Q Okay.  All right.  That -- that covers that
 3  issue then.  So, let's move on a little bit to the
 4  next exhibit number -- Exhibit H.  Do you recognize
 5  this document?
 6   A Yes.
 7   Q So, this would be what we refer to as a
 8  Hello Goodbye letter; is that right?
 9   A Correct.
10   Q And, so, this is the SN is going to become
11  Mr. Crum's servicer as of March 23rd, 2018, correct?
12   A Yes.
13   Q All right.  Let me ask you -- this is a
14  document that is marked as Exhibit I.  Do you
15  recognize this as a SN statement?
16   A Yes.  It's a billing statement.
17   Q Okay.  And this says that down at the bottom
18  where the coupon is, it says, a "$18.50 late charge
19  will be charged on or after May 17th, 2018."  Did I
20  read that correctly?
21   A I am trying to --
22   Q Down under the total amounts due in the
23  payment coupon.
24   A Okay.  Yes.  I see that.
25   Q All right.  And this shows the loan being
```



(866) 715-7770
advancedONE.com

```
 1   due for a total amount of $1,366.83 and due for March
 2   the 1st of 2018, correct?
 3    A Yes.
 4    Q And this would have been a statement that
 5   was sent in April for the May's payment, correct?
 6    A Yes.  I believe that's correct.
 7    Q All right.  So, do you know if this is the
 8   first statement that would've been sent to Mr. Crum
 9   from SN?
10    A Let's see.  We took over in March.  It
11   would've been an April statement.  It would've been
12   the first one that went out from our company.
13    Q Okay.  And would -- would the April
14   statement have shown him also to be two months behind
15   as this one would have?
16    A Yes.
17    Q And, again, these two months that he's
18   behind are allegedly because he made 58 payments
19   during the bankruptcy rather than 60, right?
20    A Yes.
21    Q All right.  So, if that number is wrong,
22   then all of these statements that were sent to him
23   saying he was two months behind are also wrong; is
24   that correct?
25    A That would be correct.
```



```
1    Q After having you take a break for lunch and
2    had the opportunity to think back about some of the
3    documents we've looked at, can you now agree with me
4    that he did make all payments called for during the
5    bankruptcy?
6     A No.
7     Q You still maintain that he did not make 60
8    payments?
9     A Yes.
10    Q Okay.  You don't dispute that he made 13
11   payments to cover the arrearage, correct?
12    A Correct.
13    Q So, we're really just talking about whether
14   the number is 58 or 60?
15    A Yes.  The payments made by the trustee after
16   that.  Yes.
17    Q Okay.  And it's also your position that --
18   that SN would be entitled to collect those two
19   payments irrespective of the bankruptcy discharge?
20    A Yes.
21    Q Let me show you what I marked as Exhibit J.
22   Exhibit J, is this the Introductory Letter to Mr. Crum
23   from SN?
24    A Yes.
25    Q And this is a document that you're required
```



```
 1   to send under federal law that we commonly refer to as
 2   RESPA, R-E-S-P-A, correct?
 3    A Yes.
 4    Q Okay.  And based on your position that Mr.
 5   Crum had not paid all payments due during his
 6   bankruptcy, you were treating Mr. Crum's loan as being
 7   in default at the time you acquired servicing rights,
 8   correct?
 9    A Delinquent, not in default.
10    Q In other words, he was past due, not
11   current?
12    A Correct.
13    Q Okay.  And --
14    MS. LANGSTON:  Mr. Wooten, I didn't hear
15   your question.  All I heard was not correct.
16    MR. WOOTEN:  In other words, he was past due
17   and not current.
18    MS. LANGSTON:  Thank you.
19    MR. WOOTEN:  No problem.
20    Q And Mr. Fogleman, is it your understanding
21   that because Mr. Crum was being treated as not
22   current, that the FDCPA applied to your servicing of
23   his loan account?
24    MR. WAGNER:  Objection to form.
25    A I -- I mean, I would -- I would defer to
```



| | |
|---|---|
| Transcription - William A. Fogleman 30(b)(6) 09/14/2020 | Page 79 |

```
 1   counsel for a legal opinion on that.
 2     Q Okay.  Did -- was there a point in the loan
 3   history from the time you acquired servicing until
 4   today where SN has treated Mr. Crum as contractually
 5   current?
 6     A No.
 7     Q Okay.  Let me show you what I marked as
 8   Exhibit K and as you if you recognize that document?
 9     A Yes.
10     Q Okay.  And what is this document?
11     A It's a loan history from SN Servicing.
12     Q Okay.  And what period of time does this
13   document cover?
14     A Let's see.  March 26th, 2018 through June the
15   1st, 2019.
16     Q Okay.  Now, if you'll on the first page of
17   this with me, there is an entry on 05/25 of 2018 where
18   a -- a late charge was assessed, correct?  I think the
19   actual transition date on your spreadsheet may be May
20   17th, 2018.
21     A Yes.  There was the -- the transaction date
22   of May 17th there was.  Yes.
23     Q Okay.  And, so, if we were to check every
24   month after that, there would also be an $18.50 late
25   fee assessed to Mr. Crum's account since that May of
```



```
 1   2018 date, correct?
 2    A Yes.
 3    Q And that would be assessed because SN was
 4   treating Mr. Crum as being two months behind?
 5    A Yes.
 6    Q And if Mr. Crum had actually paid the 60
 7   payments, then you would not be assessing these late
 8   fees, correct?
 9    A Correct.
10    Q So, in other words, if Mr. Crum did pay 60
11   payments through his bankruptcy, these late fees
12   should not have been assessed?
13    A Yes.
14    Q All right.  We can skip over Exhibit L.
15   It's a cleaner version of a prior document.  If you go
16   to Exhibit M please.  Do you recognize Exhibit M?
17    A Yes.
18    Q Okay.  And this is what we refer to as a
19   Fair Debt Collection Practices Act Notice; is that
20   correct?
21    A Yes.
22    Q And in this document, SN states that it is a
23   debt collector attempting to collect a debt, right?
24    A Yes.
25    Q Okay.  And this letter has a balance in it
```

