UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL F. CRUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-02045-JRS-TAB |
| | ) |
| SN SERVICING CORPORATION, | ) |
| HOME SERVICING, LLC, | ) |
| US BANK TRUST NATIONAL | ) |
| ASSOCIATION, | ) |
| | ) |
| Defendants. | ) |

**Order on Motion for Summary Judgment**

After Plaintiff Michael Crum received a Chapter 13 bankruptcy discharge, Defendant SN Servicing Corporation ("SN Servicing") attempted to collect two payments Crum had already made under the Chapter 13 Plan, and SN Servicing assessed various fees in relation to those payments. According to Crum, SN Servicing's actions violated the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq*. SN Servicing moves for summary judgment on that claim, Count XVII. (*See* ECF No. 119.) For the following reasons, the motion is granted.

## I.   Background

In 1997, Crum borrowed $64,800 to purchase his home in Bloomington, Indiana, and make renovations to it. (Crum Dep. Tr. 8:10–17, ECF No. 120.) The loan was secured by the house.

In 2012, Crum fell on hard times and became delinquent on loan payments, so he filed a petition for Chapter 13 bankruptcy. (*Id*. at 12:16–13:7.) Pursuant to the

Chapter 13 Plan, the Trustee received payments from Crum and applied them toward creditors' claims as laid out in the Plan. Crum fulfilled his obligations under the Plan, but bankruptcy documents reflect that the Trustee mistakenly overpaid the pre-petition arrearage of $5,922.93 by two monthly payments of $455.61 per month (i.e., she paid a total of $6,834.15 toward the pre-petition arrearage) and underpaid the ongoing obligations of $27,336.60 by the same amount (i.e., she paid a total of $26,425.38 toward the ongoing obligations). (*See* ECF No. 46-1; ECF No. 46-2.) Crum received a discharge on February 9, 2018. (*Id*. at 14:5–10.)

Starting March 23, 2018, SN Servicing began servicing Crum's mortgage loan. (Crum Dep. Tr. 15:11–19, ECF No. 120.) Crum called to inform SN Servicing that, because of the Trustee's mistakes, a previous loan servicer had believed that Crum was delinquent by two months; Crum told SN Servicing that he was actually current on his payments. (*Id*. at 19:1–16.) But SN Servicing informed Crum that it disagreed with him and considered him delinquent by two months. (*Id*. at 20:5–12.) It began charging Crum late fees with respect to the two disputed payments. (*See, e.g.*, Fogelman Dep. Tr. 79:16–80:13, ECF No. 120.)

Crum filed this lawsuit on May 22, 2019. In October of 2019, Crum requested a payoff statement from SN Servicing. (ECF No. 124-48.) The statement included the two disputed monthly payments, $333.00 in late charges, and $11,965.00 in attorney fees associated with Crum filing this case. (*Id*. at 2–3.) The same month, Crum obtained refinancing for the mortgage loan and paid off SN Servicing—disputed payments, associated fees, and all. (Crum Dep. Tr. 29:6–30:15, ECF No. 120.) SN

Servicing moves for summary judgment on Count XVII, which alleges violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq*. (ECF No. 119.)

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of production. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169). If the movant discharges its initial burden, the burden shifts to the nonmovant, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of his case. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009). The Court construes all facts and any inferences arising from the facts in favor of the nonmovant. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citation omitted).

## III. Discussion

Under the Indiana Deceptive Consumer Sales Act ("IDCSA" or "Act"), a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). The IDCSA's reach is far. The term "consumer transaction" includes "[t]he collection of or attempt

to collect a debt by a debt collector." Ind. Code § 24-5-0.5-2(a)(1)(C). And a "supplier" includes any "person who regularly engages in or solicits consumer transactions . . . ." Ind. Code § 24-5-0.5-2(a)(3)(A).

"Specifically, the Act provides for two kinds of actionable deceptive acts: 'uncured' deceptive acts and 'incurable' deceptive acts." *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998). An uncured deceptive act is defined as "a deceptive act . . . with respect to which a consumer who has been damaged by such act has given notice to the supplier" but "no offer to cure has been made to such consumer within thirty (30) days after such notice" or "the act has not been cured as to such consumer within a reasonable time after the consumer's acceptance of the offer to cure." Ind. Code § 24-5-0.5-2(a)(7). An incurable deceptive act is defined as "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8).

The Act does not define "unfair," "abusive," or "deceptive." One of Crum's arguments is that SN Servicing's conduct amounted to an "unfair" act under the IDCSA, if not a "deceptive" one. In turn, SN Servicing argues that "deceptive" is the operative word and that "unfair" and "abusive" should be ignored. To determine what work "unfair" and "abusive" do for the statute, the Court looks to state court constructions of the IDCSA. Indiana courts tend to conflate the three words.[1] *See,*

---

[1] It is not entirely surprising that the state courts read the three terms synonymously given their overlapping plain meanings. In common parlance, "deceptive" means "tending or having power to cause someone to accept as true or valid what is false or invalid." *Deceptive*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020). "Unfair" means "marked by injustice, partiality, or deception." *Unfair, Merriam-Webster's Collegiate Dictionary* (11th ed.

4

*e.g.*, *Gasbi, LLC v. Sanders*, 120 N.E.3d 614, 620 (Ind. Ct. App. 2019) (finding plaintiff stated a claim under IDCSA by alleging defendant "charged an unfair consumer fee" but elsewhere describing such fee as a "deceptive act").  Notably, while the court in *Gasbi* did not try to define these three terms, it considered the broadness of the statutory language in determining what conduct constituted an unfair, abusive, or deceptive act: "Given the breadth of the language in subsection (a) of Indiana Code Section 24-5-0.5-3 – that is, a prohibited act by a supplier includes 'an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction' – conduct prohibited elsewhere in the Indiana Code could also be a deceptive act under the Consumer Act." *Id.* (holding that fee prohibited in Motor Vehicle Dealer Services Act could be predicate act for IDCSA liability, even though the Motor Vehicle Dealer Services Act provision lacked a private right of action).  The Court will follow the lead of the state courts by reading "unfair, abusive, or deceptive act" broadly to include any act that is misleading to consumers or otherwise prohibited at law.

SN Servicing argues it deserves judgment as a matter of law on the IDCSA claim for several reasons.  Most fundamentally, SN Servicing says that no reasonable jury could find its conduct deceptive.  According to SN Servicing, it merely "told Plaintiff that it believed that he was two mortgage loan payments behind." (Def.'s Br. at 8, ECF No. 120.)  SN Servicing did not "try to trick him," it says.  (*Id.*)

For one, this argument seems to misunderstand the mens rea needed to establish an IDCSA claim.  An IDCSA claim founded on an *incurable* deceptive act includes the

---

2020).  And, in this context, "abusive" must mean "characterized by wrong or improper use or action."  *Abusive*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020).

element of "intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8). But a purpose to mislead is not an element of an IDCSA claim based on an *uncured* deceptive act. *See McKinney*, 693 N.E.2d at 68 (noting the lack of an intent-to-defraud element in IDCSA claims based on uncured deceptive acts as opposed to incurable deceptive acts); *see also* Ind. Code § 24-5-0.5-2(a)(7) (no mens rea requirement listed); Ind. Code §§ 24-5-0.5-3(b)(1)–(3), (5)–(8), (10), (14) (enumerated deceptive acts containing the element "knows or reasonably should know"—i.e., a negligent mental state).

The Court agrees there is no evidence of an intent to defraud, so SN Servicing has not performed an incurable deceptive act. Although Crum points to evidence of SN Servicing employees who handled Crum's account in a way inconsistent with their ample knowledge and experience, (*e.g.*, Lisby Dep. Tr. 10:17–25, 17:13–22, 19:12–22, ECF No. 124-26; Fogleman Dep. Tr. 141:8–14, ECF No. 124-19), this is at most evidence of negligence or recklessness, not intent to defraud or mislead. But this same evidence does establish an IDCSA claim premised on an uncured deceptive act. SN Servicing concedes it did not cure its disagreement with Crum. (Def.'s Br. at 7, ECF No. 120.) Moreover, a jury could reasonably find (1) that the two mortgage payments at issue were paid and discharged, (2) that SN Servicing should have known that it was not entitled to collect the two payments, (3) that SN Servicing's attempts to collect those two payments were misleading or improper at law, *see* 11 U.S.C. § 524(i), and (4) that those attempts were therefore uncured deceptive acts within the meaning of the IDCSA.

6

SN Servicing also awkwardly tries to characterize its representations to Crum as unactionable "opinions." It is true that "statements of unverifiable opinion" that are "not representations of fact at all" cannot be deceptive acts for purposes of the IDCSA. *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013). But it would be absurd to think that a supplier should escape liability by simply appending "I believe" before a misleading statement of purported fact. To hold as much would be to "ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990); *see also* Ind. Code § 24-5-0.5-3(a) ("An act . . . prohibited by this section includes both implicit and explicit misrepresentations."). Consider the context here: a debt collector, SN Servicing, talking to a debtor, Crum. Anyone in the debtor's situation would understand a statement from the debt collector about the debtor's obligations to be a statement of fact. SN Servicing's attempts to collect debt from Crum are nothing like the puffing considered unactionable in *Kesling*, where a vendor's statement that a car was "sporty" and available at a "great value price" was an unverifiable opinion. *See* 997 N.E.2d at 332. SN Servicing's statements about the collectability of the two misapplied mortgage payments can certainly be verified as true or false. Not long ago, the parties and the Court verified that SN Servicing should not have tried to collect the two payments. (*See generally* Order Mot. Reconsider, ECF No. 123.)

In a similar vein, SN Servicing claims it committed no deceptive acts because its representations to Crum were "statements of law," which "are seldom actionable, especially on matters for which the legal question is unsettled or unresolved."

7

*Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019). This is a strange argument that SN Servicing does not elaborate upon. What exactly is the novel point of law that SN Servicing and Crum disagreed about? SN Servicing does not say. One can imagine a debt collector like SN Servicing saying something like "Since you owe me, pay me"—that is a statement of fact, not a statement of law. All in all, this argument is more semantic acrobatics that the Court will not credit.

Next, SN Servicing argues there is no evidence that Crum relied on its deceptive acts. Only a "person *relying upon* an uncured or incurable deceptive act may bring an action for the damages" under the IDCSA. Ind. Code § 24-5-0.5-4(a) (emphasis added). Accordingly, an IDCSA claimant must show that he relied on the alleged deception. *See Rainbow Realty Grp.*, 131 N.E.3d at 178 ("A prerequisite for obtaining damages is that the claimant relied on the deception."); *see also Reger v. Arizona RV Centers, LLC*, No. 3:16-CV-778-MGG, 2021 WL 274316, at *17 (N.D. Ind. Jan. 26, 2021) (finding continuing dispute of fact in IDCSA claim as to whether consumer relied upon deceptive omission of fact); *IUE-CWA Loc. 901 v. Spark Energy, LLC*, 440 F. Supp. 3d 969, 976 (N.D. Ind. 2020) (finding consumer sufficiently alleged reliance on a representation to state an IDCSA claim). A person relies on a statement if he believes it and acts upon such belief. *Cf. Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind. Ct. App. 1981) (describing the concept of reasonable reliance and stating that a person "simply cannot believe, or rely upon, everything he is told"); *Reliance, Black's Law Dictionary* (11th ed. 2019) (defining reliance as "[d]ependence or trust by a person, esp. when combined with action based on that dependence or trust"); 37 C.J.S.

8

*Fraud* § 47 ("[A] reliance on representations necessarily implies a belief in their truth, and it is therefore obvious that one could not have relied on representations where their falsity is known or obvious.").

This reliance element poses a problem for Crum. Despite SN Servicing's prodding, Crum believed at all times that he had already made the two disputed payments via his Chapter 13 Plan. (Crum Dep. Tr. 21:17–24, ECF No. 120.) Even when Crum refinanced the loan and paid off SN Servicing—including the two disputed payments, late charges, and attorney fees—he did not do so because of SN Servicing's representations; to the contrary, he says he refinanced because he needed "to put a new central air and furnace in" his house. (*Id.* at 29:6–30:8.) In other words, although SN Servicing's collecting conduct could be considered "deceptive" in the sense that its representations tended to mislead, Crum *was not deceived*. He never believed the representations or acted upon a belief in the truth of the representations. Thus, there is insufficient evidence that Crum relied on SN Servicing's deceptive acts. SN Servicing is entitled to judgment as a matter of law on the IDCSA claim.

The Court does not reach the remaining arguments the parties have raised, as it is already clear Crum has not met his burden of production as the non-movant on every element of the IDCSA claim. *See Lewis*, 561 F.3d at 702.

Nor does the Court reach the arguments the parties *have not* raised. In the briefing for this motion for summary judgment, Crum staked his IDCSA claim on SN Servicing's representations that he owed two mortgage payments that he did not owe. That is what the Court focused on above. Almost two years ago, when this litigation

9

began, Crum did allege that SN Servicing also committed unfair and deceptive acts "by assessing fees and charges improperly" and "by declaring a default and initiating the Foreclosure Case when there was not a legitimate basis to do so." (Am. Compl. ¶ 361, ECF No. 34.) In an apparent matter of first impression, an Indiana state court has found that a consumer can state an IDCSA claim based on an unfair document-preparation fee charged by a car dealership. *See Gasbi*, 120 N.E.3d at 620.[2] One could imagine a similar argument regarding the unjustified late fees SN Servicing charged Crum. However, Crum chose not to develop either of these additional theories of his IDCSA claim in the briefing, and "[i]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988). The principle that undeveloped arguments are forfeited should not surprise Crum or his counsel; the Court has already alluded to this principle in the context of a motion to dismiss in which Crum very nearly forfeited Count VI. (*See* Order Granting Defs.' Mot. Dismiss at 4, ECF No. 108.) Crum does not discuss the "Foreclosure Case" at all in his brief. And, while Crum mentions at several junctures

---

[2] It remains to be seen how a consumer could "rely[] upon," Ind. Code § 24-5-0.5-4(a), an unfair document-preparation fee. The court in *Gasbi*, which reviewed only the trial court's denial of a motion to dismiss, did not address the reliance element of the IDCSA. The undersigned struggles to see how a person could "rely upon" a fee unless "reliance" in the context of the IDCSA means something other than what "reliance" generally means elsewhere in law—believing the truth of a representation and acting upon such belief. If "relying upon" a fee means believing it was legitimately charged and paying it, then Crum cannot base his IDCSA claim on the late fees or attorney fees SN Servicing charged him, even if he had not forfeited this argument; Crum *did not* believe that the late fees or attorney fees were legitimately assessed against him, but he paid them anyway. In any event, the Court has no occasion to decide the issue, which was not briefed.

the attorney fees and late fees that SN Servicing charged him, (*see* Mem. Opp'n Summ. J. at 6, 11, 12, 21, 24, 30, ECF No. 132), he never structures a cohesive argument around these fees as the predicate acts for his IDCSA claim. It would be inappropriate for the Court to craft the relevant argument on Crum's behalf, especially where such argument could implicate relatively unexplored issues of state law.

### IV.   Conclusion

SN Servicing's motion for summary judgment, (ECF No. 119), is **granted**. Crum's IDCSA claim at Count XVII is **dismissed with prejudice**.

**SO ORDERED**.

Date: 8/10/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.